**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| DENNIS SHERRELL ANDERSON, : | |
| #314083 | |
| Plaintiff : | |
| | |
| v. : | CIVIL ACTION NO.  WMN-03-2589 |
| | |
| OFFICER W. EDWARDS : | |
| Defendant              oo0Ooo | |

**MEMORANDUM**

Pending is a Motion to Alter/Amend Judgment, Or in the Alternative, for Relief from Judgment of the Court's February 28, 2006, grant of summary judgment in favor of Defendant. Defendant has filed a Response in Opposition. Also before the Court is Petitioner's Response in Opposition to Defendant's Second Motion for Summary Judgment.[1]  No hearing is necessary. See Local Rule 105.6. (D. Md. 2004). The Court grants Plaintiff's motion for reconsideration, and finds that summary judgment in favor of Defendant is appropriate.

**I. Background**

Plaintiff filed this complaint on September 4, 2003, alleging Defendant William Edwards, a correctional officer, failed to protect him from assault by another detainee.[2] Specifically, Plaintiff claimed that he noticed his assailant Chad Robinson and Officer Edwards talking together and looking at him prior to the assault. Paper No. 24, Exhibit A at 17; Paper No. 54 Attachment 1 ¶ 14.

---

[1]  Plaintiff is represented by counsel. Plaintiff originally proceeded in this action pro se with assistance of counsel from the Prisoner Rights Information System of Maryland. See Paper No. 52 ¶.

[2]  The incident occurred while Plaintiff was detained at the Prince George's County Detention Center. Plaintiff is presently incarcerated in the Maryland House of Correction-Annex.

Plaintiff went to his cell to get some papers, and Chad Robinson followed him.  Papers Nos. 1 at 4, 31 at ¶ 23.  Robinson then accused Plaintiff of talking about him, an allegation which Plaintiff denied. Paper No. 31 at ¶¶ 23-25.  Plaintiff turned to see Officer Edwards talking on the phone with his back turned from him.  Id. at ¶ 25.   Robinson hit Plaintiff, who sustained a broken jaw.  Id.  Plaintiff acknowledges that he had no interaction with Chad Robinson and knew him only "by face" prior to the incident,  Paper No. 24, Exhibit A at 7, 13-14.  Before the assault, Plaintiff indicates that he had submitted several requests to transfer from the unit due to problems with an inmate named George Hill.[3]   Paper No. 31, at 2-3.  Plaintiff states George Hill and Chad Robinson were friends. Paper No. 31 at ¶¶ 7-8.

On March 8, 2005, Defendant's Motion for Summary Judgment was granted in part and denied in part.  Summary judgment was granted as Plaintiff's failure to supervise claim and denied without prejudice as to the failure to protect claim. Paper Nos. 34 & 35.  Resolution of the failure to protect claim was delayed due to the parties' failure to correctly identify the date on which the assault occurred.  Paper No. 35.  The correct date of the assault, on or about  January 15, 2003, is no longer at issue.  Papers Nos. 39 n.1; 45; 50; and 54 ¶8.

On January 5, 2006, defense counsel filed a Motion to Dismiss or in the Alternative Second Motion for Summary Judgment. On January 9, 2006, a notice was sent to Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).  On January 26, 2006,  Plaintiff filed a Motion to Extend Time until March 27, 2006. Paper No. 45.   On January 31, 2006, the Court granted Plaintiff's Motion to Extend Time.

---

[3] Plaintiff indicates the requests were made to correction officials other than Defendant. Paper No. 54, Attachment 1 ¶ 31.

**II. Analysis**

      A. Motion to Reconsider

Based on the date for a response to the dispositive motion as provided in the Roseboro notice, summary judgment was granted on February 28, 2006. Inasmuch as Plaintiff had been granted until March 27, 2006, to file a response to the Second Motion for Summary Judgment, the Court will grant reconsideration pursuant to Federal Rule of Civil Procedure 59(e).

      B. Motion for Summary Judgment

Summary judgment is granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). The moving party bears the burden of showing that there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c); Pulliam, 810 F.2d at 1286 (citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

The Court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to

3

confront the motion for summary judgment with an affidavit or other similar evidence. See Anderson, 477 U.S. at 256. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" Barwick v. Celotex Corp., 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting Seago v. North Carolina Theatres, Inc., 42 F.R.D. 627, 632 (E.D.N.C. 1966). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

    C. Discussion

In order to prevail on a claim that prison officials failed to protect him from the violence of other inmates, Plaintiff must establish that Defendant exhibited deliberate or callous indifference to a specific known risk of harm. See Pressly v. Hutto, 816 F. 2d 977, 979 (4th Cir. 1987). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 833–34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see also Rich v. Bruce, 129 F. 3d 336, 339–40 (4th Cir. 1997). In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference. See Farmer, 511 U.S. at 834.

Defendant has filed an affidavit in which he attests that prior to the incident on January 15, 2003, the assailant had never displayed any acts of violence toward Plaintiff or any other inmate.

4

Paper No 39 Exhibit B at ¶ 7-13. The affidavits of two other corrections officers, Angel Vazquez and Jesse Daniels, attest similarly. Paper 39, Exhibits C & D. Officer Vazquez states he has no knowledge of Plaintiff ever asking him to forward a complaint to another individual. See id. at Exhibit C ¶ 3. Officer Daniels states that he has no knowledge of ever receiving a complaint from Plaintiff in regard to this case. See id. at Exhibit C ¶4; Paper No. 54, Attachment 1 ¶ 31 .

Plaintiff's affidavit in support of his Motion in Opposition to Summary Judgment adds the following new information to his previous account of the incident. Plaintiff attests: "I know in my heart that Officer Edwards knew that Chad Robinson was going to attack me. This sort of thing happens in the Jail all the time. I have also seen this sort of thing happen on the street." Paper No. 54, Attachment 1 ¶ 12. Plaintiff continues that just prior to the assault Officer Edwards and Chad Robinson gave him "a very evil look, like I'd done something wrong." Id. at ¶15. Plaintiff attests Officer Edwards then "just shrugged his shoulders, like "oh, well. Shit happens" and then turned away." Id. at ¶ 16. [4] When Plaintiff went to his cell, Chad followed him, and "[e]verybody on the tier turned and watched us, like they all knew what was going down." Id. at ¶17.

According to Plaintiff, the only reason thinks Officer Edwards allowed Chad Robinson to attack him was "a beef I had with Edwards a few weeks before this happened." Id. at ¶24. Plaintiff states sometime after "Christmas and before January 14, 2003, he was sick and lying on the bed in his cell when Officer Edward "was doing the count. Id. at ¶15. "[Edwards] wanted me to move my head, so he'd know I was alive. I didn't move, because I wanted to sleep. So he turned the light on." Id. at ¶25. Plaintiff continues that he "cussed [Edwards] out real good." Id. at ¶26. Plaintiff states that Officer Edwards responded "All right, I'll be what you want me to be. I'll be all that." Id. at

---

[4] Plaintiff does not claim to have actually heard the content of the discussion.

5

¶27. Later, Edwards told Plaintiff that he had to remain in his cell for the day. See Id. at ¶28. Plaintiff states he then told Edwards "All right, fuck you, man." Id. Officer Edwards did not reply. See id. Plaintiff states: "Maybe Edwards was pissed off enough that I disrespected him to let Chad do what he did to me." Id. at ¶29. Further Plaintiff states in his affidavit that Officer Edwards was "always fraternizing" with the guys. Id. at ¶22 "Like he knew everybody from outside. He was from Greenbelt. I know he boxed on the outside with George Hill." Id. at ¶ 23.

Viewed in the light most favorable to Plaintiff, the evidence is insufficient to demonstrate a genuine and material dispute of fact. Plaintiff presents nothing here other than his own conclusory statements to infer that Officer Edwards had prior knowledge of the attack and failed to protect him. Plaintiff attests that he knows "in his heart" that Officer Edwards knew that Chad Robinson was going to attack him because: other inmates on the tier were watching; Officer Edward had been talking to Chad Robinson and was on the phone with his back turned away from Plaintiff when the assault occurred; and sometime prior to the incident, Plaintiff had "cussed out" Officer Edwards.

Plaintiff has not submitted statements from other inmates in support of his contention that everyone knew the assault was going to happen. Further, even if other inmates knew of the impending attack, there is no evidence to attribute this knowledge to Defendant. Assuming Plaintiff previously had "cussed out" Officer Edwards, there is no evidence presented that Defendant knew Chad Robinson posed a risk to Plaintiff. Plaintiff has not submitted an incident report nor indicated whether he was cited in an incident report for his remarks to Officer Edwards. Further, even if Officer Edwards and Chad Robinson had been looking toward him just before the assault, Plaintiff has not demonstrated that he was privy to their conversation, much less that Officer Edwards knew that Chad Robinson intended to attack him.

Counsel for Plaintiff admits this evidence is circumstantial, counsel analogizes the circumstances of this case to determining the state of mind necessary for the formation of a contract, where a factual resolution is appropriate for the finder of fact. Paper No. 54, ¶ 21-22.  Under the facts presented here, however, Officer Edwards' state of mind is clear; he attests that he had no knowledge Chad Robinson was going to strike Plaintiff.  Indeed, Plaintiff himself acknowledged that he had no interaction with Chad Robinson prior to the incident.  Plaintiff is attempting to create a genuine issue of material fact based on his speculative interpretation of the body language of Officer Edwards and Chad Robinson prior to the attack, his feeling "in [his] heart," and his belief that other inmates knew of the attack.  Plaintiff cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another. See  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985).

**IV. Conclusion**

The Court will direct entry of summary judgment in favor of Defendant.  An Order consistent with this Memorandum follows.

/s/

May 24, 2006  _____
Date                                                    William M. Nickerson
                                                         United States District Judge

7